The opinion of the court was delivered by
Watkins, J.
This is an hypothecary action brought against the two defendants, Ulysse and Homer Joubert, as third possessors *1102 of property derived from the plaintiff’s judgment debtor, Phillip Thompson, subject to his duly recorded judicial mortgage; and the prayer of his petition is that same be ordered sold to pay that judgment in due course of proceedings.
Plaintiff’s averments are to the effect that on the 15th of December, 1890, he obtained a judgment against Thompson in the United States Circuit Court at New Orleans, in this State, for the sum of $8768.90, with interest, and caused same to be duly inscribed in the proper book of mortgages for the parish of St. Landry on the 20th of said month.
That said registry and inscription operated in his favor from and after that date as a judicial mortgage upon all real property then owned or since acquired by his judgment debtor in that parish. That at the date and time of said registry and inscription Thompson owned certain described property in that parish, against which he proceeds and which is in the possession of the two defendants in the proportions stated.
For the evident purpose of identification the plaintiff avers “ that on the 9th of December, 1890, said Phillip Thompson sold said property to William Evans * * * but said sale was only recorded in the conveyance book of the parish on the 22d of December, 1890.” He also avers “ that since the purchase by said William Evans, as aforesaid, he has disposed of said property — one-half to Homer Joubert, and the remaining one-half to Ulysse Joubert” — though he avers that said sales to the Jouberts “ were only recorded in the conveyance office of St. Landry parish on the 22d day of December, 1890, and said properties were and are affected by his said mortgage,” etc.
After excepting, the defendants filed an answer and called their vendor, William Evans, in warranty, demanding such judgment in their favor against said warrantor as may be rendered against them; and Evans, in turn, excepted, and called in warranty his vendor, Thompson, and thereupon Thompson filed an answer pleading the general issue, and specially disavowing the existence of any recorded judgment operating a judicial mortgage on the property he conveyed to Evans at date of sale, December 9, 1890; also, that the failure of Evans to have his act of sale recorded in time relieves him from all responsibility.
On the issues thus made up the case went to judgment and was *1103 decided in favor of the plaintiff and against the defendants, and they had like judgment against their warrantor, Evans; and he in turn had judgment against his warrantor and. plaintiff’s judgment debtor, Thompson.
Erom this judgment Evans, warrantor, is the only appellant— other parties having acquiesced therein.
The defendants tendered an exception of no cause of action, coupled with a general denial and a special defence as to their warrantor, Evans, and he tendered the two following exceptions, viz.:
1. That the judgment the plaintiff obtained in the United States Circuit Court against Phillip Thompson is an absolute nullity on its face, in that it alleges that the plaintiff, Joel B. Wolfe, was doing business and obtained said judgment under the firm name and style of Udolpho Wolf, Son & Co., in violation of a prohibitory law of the State of Louisiana and of the State of New York, where he resides.
2. That since the institution of this suit plaintiff has proceeded by ft. fa. to execute his judgment by the seizure of his debtor’s property situated in the parish of Acadia, and for which cause this suit should be dismissed.
These exceptions were overruled, and the ruling of the judge a quo constitutes the chief ground of appellant’s complaint.
No particular stress is laid on the defendant’s exception of no cause of action, and it is manifestly without any merit, as will be seen from the averments of the petition we have quoted.
But counsel earnestly insists upon the first exception of the warrantor, Evans, which is to the effect that the plaintiff’s judgment against Thompson is an absolute nullity on its face, in that it discloses that he did business in the social name of Udolpho Wolf, Son & Co., in violation of a prohibitory statute of the State of Louisiana and a like statute of New York.
It appears that on the trial of this exception the warrantor, Evans, offered in evidence the certified copy of the judgment which had been recorded so as to operate a mortgage, for the purpose of showing the nullity of that judgment on its face, as alleged in his exception. Plaintiff, in turn, offered the entire Circuit Court record, pleadings and evidence, which was objected to by warrantor’s counsel, and'the objection was sustained and plaintiff reserved a bill of exceptions.
*1104 In so doing the district judge ruled correctly. The exception urged was to the effect that the plaintiff’s judgment was absolutely null, and that such nullity was apparent on its face, and, of course, the sole proof of such exception must be found in the judgment itself. Looking at the judgment we find its recitals to be as follows, viz.:
“It is ordered, adjudged and decreed that the plaintiff, Joel B. Wolfe, residing in the city and State of New York, and there doing business under the firm name and style of Udolpho Wolf, Son & Co., and a citizen of the State of New York, do have and recover of and from the defendant, Phillip Thompson, the sum of $3768.90,” etc.
. And looking into the statute which is relied upon, we find it to be as follows, viz.:
“ Hereafter, no person shall transact business in the name of a partner not interested in his firm, and when the designation ‘ and company,’ or ‘ & Co.’ is used, it shall represent an actual partner, or partners.” R. S., Sec. 2668.
The succeeding section declares that a person offending the foregoing prohibition shall be deemed guilty of a misdemeanor and fined.
It will be observed that this statute does not formally and in terms pronounce the nullity of transactions in violation thereof; but counsel’s contention is that we must connect this statute with that provision of the code which declares that “ whatever is done in contravention of a prohibitory law is void, although the nullity be not formally pronounced.” R. C. C. 12.
Accepting warrantor’s theory as correct, for the purpose of argument, and yet we find the proof impertinent and inapplicable, in that it does not show that plaintiff ever did any business in the State of Louisiana; on the contrary, the judgment invoked affirmatively discloses that plaintiff resided in and was a citizen of the city and State of New York, and was there engaged in business at the time the defendant contracted the indebtedness on which same is predicated. Hence the Louisiana statute was not violated, by virtue of the fact that the plaintiff conducted business in the city and State of New York “ under the firm name and style of Udolpho Wolf, Son & Co.”
It is therefore clear that the decision of the question must be controlled by the statute of New York.
Of what is the statute law of the State of New York on this ques *1105 tion, there is no proof in the record, but we are cited to the case of Kent vs. Majoiner, 36 An. 259, in which we said that the provisions of statute (K,. S., Secs. 2668, 2669) is “ borrowed from the New York legislation on this subject. Chap. 281, S. S. Laws 1833.”
This declaration is controlling in this respect and imports full proof of the existence and purport of the New York statute. Consequently it is our duty to examine and apply the jurisprudence of the New York courts to the statute and thus ascertain whether plaintiff is amenable thereto, and his judgment absolutely void on that account; and for that purpose we make the subjoined extract from the opinion in that case, viz.:
“The highest court of that State (New York) has had, twice at least, occasion to consider and expound the purpose and scope of the statute, and has emphatically announced that its intent was to prevent the use of the name of a person not interested in a firm, and thus inducing a false credit to which it was not entitled, and this on the strength of a name which had been withdrawn, or which there was no authority to use.
“ It was against fraud and imposition which might be practiced upon innocent parties who dealt with the person who transacted business in the name of a party whose interest had ceased, or who never had any in the same, that the statute was directed. Beyond this the statute can not be extended by implication, or even by a liberal construction. 83 N. Y. 74; 72 N. Y. 198; 50 N. Y. 314. Also 5 Wheaton, 56; 7 Wallace, 486; 12 How. 83.”
Having made the foregoing analysis of the New York jurisprudence on the subject and cited the foregoing decisions of the courts of that State, we made the following application of the principal announced to the case under consideration, namely:
“We fully concur with that able court, and hold that the object of the law was to prevent the obtaining and enforcing of credit, secured by fraudulent representations, and that it was not designed to prevent the innocent infringer of its prohibition from giving credit, and, after it was given and the day of settlement had come, from demanding reimbursement, or satisfaction, to the full extent of his rights, from the benefited obligor. It would be, in the highest degree, inequitable and unjust to permit a debtor to repudiate a contract, the fruit of which he retains. The penalty attached to an infraction of the law could be inflicted, in a criminal prosecution, only *1106 at the instance of one wronged by the obtaining of an unfair or undue advantage, procured by false and fraudulent representations, by one clearly in contravention of law.
“Whatever the statute and the penalty affixed to its violation may be, we are clear that the penalty can not be extended to a civil case, when the action is to recover money from one to whom it was lent, or to whom credit was given, who was not deceived, and who lost nothing by his dealings with his creditor. * * * Dwarris on Statutes, 248; Sedgwick Stat. and Oonst. Law, 78: 9 An. 251; 10 An. 846.”
See also to same effect Halliday vs. Bridewell, 86 An. 288; and Succession of Boffinschen, 29 An. 711.
Taking the opinion in Kent’s case as our guide it is clear that, under either the New York or Louisiana statute, it is the transaction of a business that is aimed at; and that itfis the partner violating its terms, and not his customer, who incurs its penalty.
But counsel’s contention goes further, and is to the effect that, notwithstanding the debtor of such a partnership can not be heard to plead the nullity of his engagements, on account of the creditor’s violation of the statute, yet that that rule of exclusion has no application to a third person, such as a third possessor.
While it is true that a third possessor holding title to property judicially mortgaged for his vendor’s debt may collaterally attack the validity of the judgment which is the foundation of the judicial mortgage which is sought to be enforced against it (Bernard vs. Vignaud, 10 M. 482), and show that same is'null for any cause inherent to the judgment itself (Peets vs. Wilson, 19 La. 478) ; yet his rights, in this respect, are just the same as those of his vendor as judgment debtor — no greater, and nothing less. Between the vendor and vendee there is a privity of contract which entitles the latter to exercise any right of the former for his protection, notwithstanding he may have renounced or abandoned them. But it can not be argued from that premise that the third possessor could exercise the rights of the State and invoke the penalty of the statute against his vendor’s creditor, in a manner different or more effectively than his vendor could have done.
To assent to such a proposition would be to say that the debtor might do indirectly what he would not be permitted to do directly.
We are clearly of opinion that this exception of the warrantor was correctly overruled.
*1107 His second exception is tantamount to a plea of discussion; and subsequent to same being filed plaintiff filed a supplemental petition admitting the seizure and sale under fi. fa. of certain property of Thompson in the parish of Acadia, and requested the court to permit him to credit his judgment with the net proceeds of the sale. This necessary leave was granted, the judgment accordingly credited, and the exception overruled, and it passed out of the case.
That was the proper solution of the exception, and the ruling was undoubtedly correct.
A further objection is urged in argument as one arising on the face of the plaintiff’s petition and judicial mortgage, to the effect that the registry of the judgment was effected on the day following that on which it was signed, and further to the effect that plaintiff admits that at the time of registry the warrantor, Evans, was the owner by purchase from his debtor, Thompson, though his title was not registered until the day after his judicial mortgage was recorded, and consequently his property was not affected by it.
Citing this state of facts counsel makes reference to the provisions of R. S. 2501, requiring notaries to deposit all acts passed by them in country parishes in the recorders’ offices “within fifteen days at farthest after same shall have been passed,” and also those of Act 143 of 1888, declaring that judicial mortgages shall only take effect from the day of the adjournment of the court rendering the judgment; and insist that in the first place the law imposed no duty on the warrantor to file his deed of sale and have it recorded until after the lapse of fifteen days from the 9th- of December, 1890, the date of its passage before the notary; and in the second place that the registry of plaintiff’s judgment on the day after it was signed had no effect until after the adjournment of the court rendering the judgment.
The answer to the first proposition is plain, and it is that the section of the statutes quoted gives to notaries no limit within which to file acts'passed by them, but requires them absolutely to file them “within fifteen days at farthest after the same shall have been passed.” It makes it permissible for same to be filed at any time after their passage.
The code declares, in most emphatic terms, that “ the judicial mortgage takes effect from the day on which the judgment is recorded,” etc. R. C. O. 3322, 3329.
And this without regard to the date on which the court rendering the judgment adjourned.
*1108 This question was carefully examined and decided in Chaffe & Sons vs. Walker, 39 An. 35; and we are of opinion that the opinion therein announced is correct, and will bear the test of the closest scrutiny; and it is consequently affirmed.
It is true that Act 143 of 1888 has been since enacted; but that statute does not militate against the force and effect of that decision, as an examination of it will attest that it is restricted in terms to the rank of conflicting judicial mortgages and has no application to the parish of Orleans. Its provisions are as follows, viz.:
“The judicial mortgage takes effect from the day on which the judgment is recorded in the manner hereinafter directed: Provided, that judgments, the parish of Orleans excepted, rendered at any term of court, shall have no effect to create a judicial mortgage, as between judgment creditors, until from the day of the adjournment of the term at which the same was rendered, although recorded prior to the adjournment of said term.’’ Act 143 of 1888.
They are clear to the effect that they do not apply to the parish of Orleans, and are limited in their effect to the rank of conflicting judicial mortgages in other parishes of the State.
On the evidence it is clear that plaintiff’s judgment was rendered and signed in the parish of Orleans, and that plaintiff’s mortgage is the only one on the defendant’s property. Under the statute of 1888, as well as under the code, the registry of plaintiff’s judgment operated as a mortgage on Thompson’s property from the date it went to record in the parish of St. Landry. That statute conformed Art. 555 of the Code of Practice to R. O. O. 3322, and 3329, as interpreted in the Walker case; only altering the rank of competing mortgages, so as to prevent any inequality in the payment of several judgments, rendered at the same term of court, though registered in the book of mortgages at different dates.
We have given this case most careful consideration, and arise from the study of it with the clear conviction that the judgment appealed from is correct.
Judgment affirmed.